## State House Company, Inc., v. Local Joint Executive Board et al.

*Horace M. Barba,* for plaintiff.
*Louis H. Wilderman,* for defendants.

ALESSANDRONI, J., June 22, 1951.—Plaintiff, a corporation engaged in the business of operating a restaurant, filed a bill in equity to restrain defendants from alleged unlawful acts of interference with its business.

We are not required to pass upon the merits of this controversy until final hearing: Yale Knitting Mills, Inc., v. Knitgoods Workers Union, Local 190, et al., 334 Pa. 23. Our inquiry is limited to determine whether plaintiff has shown apparent ground for granting temporary relief: Carnegie-Illinois Steel Corp. v. United Steelworkers of America et al., 353 Pa. 420, 428. In the instant case the narrow issue is whether the picketing is conducted for a lawful purpose. See Wilbank et ux. v. Bartenders, etc., Union et al., 360 Pa. 48; Phillips et al. v. United Brotherhood, etc., et al., 362 Pa. 78. See also Angelucci, etc., v. Hotel and Restaurant Employees and Bartenders International Union et al., 70 D. & C. 346.

It is not true, as defendants contend, that if any purpose can be found which is lawful, the picketing

cannot be enjoined. Defendants have adopted the language found in Carnegie-Illinois Steel Corp. v. United Steelworkers of America, supra, at page 430, where the court stated that picketing will not be enjoined where its "*only* purposes are to advertise the fact that there is a strike in a certain plant and to persuade workers to join in that strike and to urge the public not to patronize the employer". Defendants wish to eliminate from consideration the qualifying adjective.

We do not find the purposes of this picketing to be lawful nor do we believe the protestations of defendants. The facts demonstrate that the alleged purposes of their conduct constitute after-thoughts in an attempt to justify their unwarranted conduct.

We find that the purpose of defendants' conduct is and has been to force plaintiff to enter into a collective bargaining agreement with them, even though they did not and do not represent a majority of the employes, and further, to coerce the employer into requiring him to force his employes to join defendant union under the penalty of discharge.

The facts upon which this preliminary finding is made are as follows: On or about October 15, 1950, Ray Turchi, president and business agent of Local 301, forwarded by telegram a peremptory command to the president of plaintiff company to appear at the offices of the union within 48 hours. At that meeting Mr. Turchi demanded that plaintiff execute a collective bargaining agreement or suffer a picket line to be thrown about its place of business. When counsel for plaintiff requested that Mr. Turchi exhibit evidence of a representation of a majority of the plaintiff's employes, he refused to do so. At all times during the course of this hearing it was admitted that defendant never represented more than 15 out of a total of 42 employes.

The following day, October 18, 1950, Mr. Turchi made good his threat and picketing has continued constantly since that time, with adequate evidence that the pickets molested and abused customers and other employes and effectively interfered with deliveries to plaintiff's place of business.

This picketing has continued even though on October 18, 1950, the Employees Representation Committee, a labor organization of employes of plaintiff, held a meeting and as a result initiated proceedings before the Pennsylvania Labor Relations Board, which ultimately concluded in an election in favor of that organization. Moreover, in the same or companion proceeding, defendant unions filed charges of unfair labor practices against plaintiff, which were dismissed by the Pennsylvania Labor Relations Board as unfounded. Subsequent to the termination of all proceedings before the labor board, plaintiff executed a two-year collective bargaining contract with the Employees Representation Committee, dated April 5, 1951, which is in full force and effect, the validity of which is not questioned.

In the face of these facts defendants now claim they are picketing to advertise the fact that this is not a restaurant affiliated with the American Federation of Labor; to induce the employes who are not members of defendant local unions to join therein and, finally, to publicize the fact that certain employes are on strike.

Defendants recognize the inherent danger of economic coercion upon plaintiff to force it to terminate the existing collective bargaining agreement, or to induce its employes to dissolve their parent organization and affiliate themselves with defendant unions. They further recognize the fact that at no time did they represent a majority of the employes and at no time did they have the right to require the employer to

execute a collective bargaining agreement such as they presented.

It is clear, moreover, that after the demands of Mr. Turchi at the first meeting the parties were brought together through the offices of Mr. Curry, a business agent of the Engravers' Union, who had been a customer of the restaurant. Mr. Curry and Mr. Turchi attempted to have plaintiff "sign up a contract and get rid of the nuisance of the picket line outside". When plaintiff's officers protested that they could not force the employes to join Local Union 301, and asked Mr. Turchi what they could do under the circumstances, he replied:

"I expected that question from you. You can do something about it. You can force them to join. You can even threaten to fire them if they don't sign up."

There is further evidence that as late as February 1951 Mr. Turchi in a published article, referring to the picket line in front of plaintiff's premises, stated this was one of the two shops in the City of Philadelphia that "Local 301 has determined to organize and sign to union contracts".

It is clear, beyond peradventure, that the real purpose of defendants' action was unlawful and is subject to restraint: Wilbank et ux. v. Bartenders, etc., Union, supra, at page 52. The conduct of defendant unions from its inception has been motivated by one objective, namely, to compel plaintiff to conduct its business with employes who are members of Locals 301 and 111, under the terms of such collective bargaining agreements as the local unions and the local joint executive board might present for execution. Their conduct is meant to and has put economic pressure upon employer-plaintiff in order to destroy the fundamental right of its employes to select a collective bargaining agent of their own choosing. It is clear that these employes did not and do not wish to be

affiliated with defendant local unions. The conduct of defendant local unions is intended to force plaintiff, by reason of the severe economic losses being sustained, to commit a violation of the Pennsylvania Labor Relations Act.

Since the picketing is for an unlawful purpose, it is unnecessary to discuss in detail the manner in which it was carried on from time to time. A preliminary decree should be entered prohibiting all picketing at the premises.

### Order

And now, to wit, June 22, 1951, upon consideration of the bill in equity and the evidence submitted at the preliminary hearing in support of and in opposition to the rule to show cause why a preliminary injunction should not issue, it appearing to the court that immediate and irreparable loss and damage will be sustained by plaintiff before the matter can be heard finally upon the merits, and it further appearing that the picketing of plaintiff's place of business was for an unlawful purpose or objective, the rule is made absolute, and it is further ordered and decreed:

1. That a preliminary injunction issue, until final hearing or until further order of the court, enjoining and restraining preliminarily the Local Joint Executive Board, Philadelphia, Pennsylvania, Hotel and Restaurant Employees and Bartenders International Union, A. F. L.; Waiters and Waitresses Union, Local 301; Ray Turchi, individually and as president and business agent of the union; Harry Davis, individually and as secretary of the union; Cooks, Chefs and Pastry Cooks Union, Local 111; and Victor Civatte, individually and as secretary of the union, their servants, agents and employes, as well as all members of the local unions and all persons acting in concert with

them or otherwise participating in their aid or on their behalf, or on the behalf of them or any of them:

(a) From picketing or causing others to picket plaintiff, State House Company, Inc., its employes, customers and other persons with whom plaintiff has business relations, and the business premises of plaintiff situate and known as 704 Chestnut Street, Philadelphia, Pa.

(b) From threatening, molesting or abusing plaintiff, its employes, its customers or other persons with whom plaintiff has business relations.

2. This order and injunction shall become effective immediately upon plaintiff's filing an injunction bond in the sum of $1,000, and shall continue until final hearing or further order of this court.