# Phillips et al., Appellants, *v.* United Brotherhood of Carpenters and Joiners of America et al.

Argued April 18, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES,, JJ.

*Edward Unterberger,* for appellants.

*Frank B. Murdoch,* with him *Arlin M. Adams* and *Schnader, Harrison, Segal & Lewis,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, May 23, 1949:

The question is whether peaceful picketing should be enjoined if its object is to force an employer to compel his employes to join a labor union under the threat of discharging them if they refuse.

Plaintiffs, Phillips and Ostroff, are manufacturers of slip covers, draperies and curtains, their establish-

ment being located on the second floor of a building at 20th and Chestnut Streets, Philadelphia. At the height of the season they employ in their plant ten girls. For one year they had a closed shop agreement with Local Union No. 124 of the Upholsterers International Union, A. F. of L. In 1939, just prior to the expiration of that agreement, a large number of members of the Local seceded and were granted a charter as Local Union No. 443 Furniture Upholstery and Drapery Workers, affiliated with the United Brotherhood of Carpenters and Joiners of America, A. F. of L. Representatives of the new Local approached plaintiffs for the purpose of inducing them to sign a closed shop agreement which would have required them to employ members of that Local exclusively. In reply to this request plaintiffs stated they would sign the proposed contract if their employes wished to join the union, and that the agents were at liberty to speak to the girls in order to induce them to do so; however, notwithstanding propaganda activities on the part of the agents, the girls refused to join. Accordingly, plaintiffs continued to operate their business as a non-union shop, but at no time did they attempt to influence their employes against joining Local No. 443 or any other union. In 1940 the union posted a one-man picket in front of plaintiffs' place of business bearing a sign which read: "Notice to the public. Phillips and Ostroff is unfair to custom furniture and drapery workers union—Phila. District Council of Carpenters Aff. with the A. F. L." Although the picketing was at all times conducted in an orderly and peaceful manner it caused great damage to plaintiffs' business; unionized truck drivers refused to pass the picket line with the result that merchandise could not be delivered to or from the premises. Plaintiffs thereupon sought a preliminary injunction; this was granted by the court and it continued in force for a period of more than seven years during which time plaintiffs made

no attempt to convert it into a permanent injunction and defendants, on the other hand, made no attempt to have it dissolved. In 1947 defendants finally filed an answer to plaintiffs' bill, hearing was had, and the court made a final adjudication, dissolved the preliminary injunction, and dismissed the bill. From that decree plaintiffs now appeal.

The business representative of Local No. 443 was asked on cross-examination what would have happened if plaintiffs had signed the closed shop agreement and the girls had nevertheless refused to join the union; would plaintiffs in that event have been obliged to discharge the girls? To which he replied, "According to the contract, that would be the procedure." One of the plaintiffs testified that the agents of the union said that "if the girls don't join, you fire the girls and we will get you new girls. . . . Q. They told you if the girls did not sign the contract, to fire the girls? A. That is what he did." Although this particular statement was denied there can be no doubt, from a reading of the record as a whole, that the purpose of the picketing was to coerce plaintiffs into compelling their employes to join the union under penalty of dismissal if they refused and was therefore designed to induce plaintiffs to violate the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168. Section 6 of that Act provides that "It shall be an unfair labor practice for an employer (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act. . . . (c) By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization."

The question arises, therefore, whether a labor organization can properly be allowed to picket an establishment in order to coerce the employer into an action which is made an unfair labor practice and therefore forbidden by a statute of the Commonwealth. Coercion

is not necessarily limited to threats of violence to a person or his property but may be quite as effective by causing him substantial business losses. The court below refused a permanent injunction under the misapprehension that peaceful picketing, being a right which, generally speaking, is constitutionally guaranteed as one of free speech, is necessarily and under all circumstances lawful, whereas, by the latest decisions of the United States Supreme Court, of this Court, and of other jurisdictions, it is well established that free speech is not involved where the labor objective is illegal and that, under such circumstances, picketing may properly be enjoined. Thus in *Wilbank v. Chester & Delaware Counties Bartenders, Hotel and Restaurant Employees Union*, 360 Pa. 48, 60 A. 2d 21, it was definitely held that an injunction restraining unlawful picketing was not an infringement of the constitutional guaranty of free speech. The facts in that case were strikingly similar to those here involved. There the proprietors of a hotel employed 14 persons the majority of whom were not members of a labor union and did not wish to become members; the employers had no objection to any of them joining a union and offered no objection to efforts of the union to persuade them to join. The business agent of the union submitted to the employers for execution a contract requiring them to employ only union members and informed them that if they did not execute it picketing would result. The employers, not desiring to coerce their employes, declined to comply with the agent's request and the picketing followed as threatened. This Court held, in an opinion by Mr. Justice LINN, that the right of the employes not to join a union was protected by section 5 of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168; that section 6 of that Act made it an unfair labor practice for an employer to interfere with, restrain or coerce employes in the exercise of the rights guaranteed by the

Act; that the purpose of the union in picketing was to require the employers to force their employes to join the union or to discharge them and employ others who were members of the union; that such a purpose was unlawful and subject to restraint. A decree of the court below enjoining the picketing was therefore affirmed. It was also pointed out in that case that the injunction sought was within the general equity jurisdiction of the Courts of Common Pleas unrestricted by the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198. The Act of June 9, 1939, P. L. 302, amending section 4 of that Act, provided that courts were no longer to be deprived of the right to issue injunctions in cases where a majority of the employes had not joined a labor organization and any labor organization or any of its officers or members engaged in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of a labor organization, and also in cases where any person, any labor organization, or any representative of a labor organization, engaged in a course of conduct intended or calculated to coerce an employer to commit a violation of the Pennsylvania Labor Relations Act of 1937 or the National Labor Relations Act of 1935.

In *Carpenters & Joiners Union of America, Local No. 213, v. Ritter's Cafe*, 315 U. S. 722, the United States Supreme Court reviewed a decree of a Texas court enjoining a union from picketing; it affirmed the decree because the picketing was in aid of an objective which was a violation of Texas anti-trust laws. In the course of its opinion the Court said, (pp. 725, 726) that "the circumstance that a labor dispute is the occasion of exercising freedom of expression does not give that freedom any greater constitutional sanction or render it completely inviolable. Where, as here, claims on behalf of free speech are met with claims on behalf of the authority of the state to impose reasonable regulations

for the protection of the community as a whole, the duty of this Court is plain."

In *Giboney v. Empire Storage & Ice Company,* 336 U. S. 490, 69 S. Ct. 684, the United States Supreme Court affirmed a decree of the Supreme Court of the State of Missouri enjoining picketing the purpose of which was to force a company operating a cold storage warehouse into a combination designed to prevent the sale of ice to nonunion peddlers, thus requiring the company to make discriminations in its sale of ice in violation of the Missouri anti-trade-restraint statute. The union had obtained agreements for that purpose from the other wholesale ice distributors, but this particular company refused to agree, whereupon the union informed it that it would use other means at its disposal to force it into line, and in pursuance of that threat it picketed the company's place of business. The union argued that the picketing was merely for the purpose of disseminating truthful information that the company was selling ice to peddlers who were not members of the union, and that its right to do this was guaranteed by the first and fourteenth amendments. The court rejected, however, the union's contentions that conduct otherwise unlawful was necessarily immune from state legislation because an integral part of that conduct was carried on by the display of placards by peaceful picketers, that peaceful picketing was beyond legislative control, and that it was an abridgement of the freedom of speech to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried on by means of language, either spoken, written, or printed.

From these decisions, buttressed as they are by unassailable logic, it is clear that, since the union here was engaged in an attempt to coerce plaintiffs into performing an unlawful act, such attempt, even though

taking the form of peaceful picketing, properly may, and should, be enjoined.*

The decree dismissing the bill is reversed at appellees' costs, and the record is remanded with direction to grant the injunction prayed for.

---

* Incidentally it may be noted that the placards bearing the slogan that plaintiffs were "unfair" to the union were themselves unfair, for they misrepresented the act. Plaintiffs admittedly never made any attempt to interfere with the endeavor of the union to induce their employes to join it. It is true that in *Cafeteria Employees Union, Local 302, v. Angelos*, 320 U. S. 293, 295, it was said that words like "unfair" are merely "loose language . . . they are part of the conventional give-and-take in our economic and political controversies", but it is also true that the word "unfair" means "dishonest", "unjust", "employing a trick or artifice", and when used by organized labor it means "unfriendly" to such labor. Certainly the facts here do not justify any such characterization of the attitude of plaintiffs in connection with the events which culminated in the present proceedings.