## Baderak *v.* Building and Construction Trades Council, Appellant.

478

Argued January 3, 1955. Before STERN, C. J., STEARNE, JONES, CHIDSEY and MUSMANNO, JJ.

*M. Herbert Syme,* for appellants.

*Roger B. Reynolds,* with him *Russell J. Brownback* and *Brownback & Reynolds,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, March 14, 1955:

This is an appeal from a decree and order of the Common Pleas Court of Montgomery County, enjoining appellants from picketing or interfering in any unlawful manner with the construction of an apart-

ment building by appellees in Bryn Mawr, Lower Merion Township, Pennsylvania.

After a hearing, during which appellants offered no testimony, the chancellor found facts substantially as follows:

Appellees were engaged in constructing a five-story reinforced concrete apartment building at an estimated cost in excess of $1,000,000. Appellant, Building and Construction Trades Council, American Federation of Labor, is an unincorporated labor organization. The individual appellants are its officers, agents or employes. Appellees had 70 or 80 non-union employes working on the apartment house project. On October 6, 1954, about three months after work began on the project, appellants stationed two pickets at each of the two driveway entrances to the building operation. Each picket carried a sign which stated: "Union Standards Are Not Being Observed On This Project. Building and Construction Trades Council, American Federation of Labor".

These pickets made no attempt to talk to the builders, contractors or their employes. Whenever a truck loaded with supplies or material approached either driveway, two men, who supervised the pickets, would leave the parked automobile where they usually sat, stop the truck drivers and talk to them. Thereafter, the truck drivers drove away without delivering their load of building materials or supplies. Although appellees secured police protection for the truck drivers, only one load of materials was delivered after the pickets appeared. Appellees have tried in vain to persuade the suppliers who had contracted to deliver materials to abide by their contracts. They have also attempted to get other suppliers to furnish materials, but were unsuccessful. As a result of the picketing, progress on the building operation practically ceased.

None of the pickets or their supervisors are or ever were employed by appellees. There is no labor dispute between appellees and their employes. The injunction restraining the picketing issued on October 20, 1954, and after hearing, was continued.

The respective rights of employers, employes and unions with respect to picketing have been the subject matter of judicial consideration many times. From the welter of decisions by this Court as well as the Supreme Court of the United States, certain principles have emerged. The dissemination of information concerning the facts of a labor dispute by picketing is an aspect of freedom of speech protected by the Federal Constitution: *Thornhill v. Alabama*, 310 U. S. 88 (1940). However, as stated in *Hughes et al. v. Superior Court of California for Contra Costa County*, 339 U. S. 460, 464 (1950) : ". . . while picketing is a mode of communication it is inseparably something more and different. Industrial picketing 'is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated.' . . . But the very purpose of a picket line is to exert influences, and it produces consequences, different from other modes of communication. The loyalties and responses evoked and exacted by picket lines are unlike those flowing from appeals by printed word. . .". If either the nature or purpose of the picketing is unlawful under state law, it may be enjoined: *Local Union No. 10, United Association of Journeymen Plumbers & Steamfitters, et al. v. Graham et al., Trading as Graham Brothers*, 345 U. S. 192 (1953) ; *Hughes et al. v. Superior Court of California for Contra Costa County*, supra; *Giboney et al. v. Empire Storage & Ice Co.*, 336 U. S. 490 (1949) ; *Wortex Mills, Inc. v. Textile Workers*

*Union of America, C.I.O.,* 369 Pa. 359 (1952), 85 A. 2d 851. The issue in this appeal, therefore, resolves itself into a determination of whether the picketing here involved is lawful under the Pennsylvania statutes and the decisions of this Court.

The Legislature has set forth the rights of the parties to a labor dispute in the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211 et seq., and the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, as amended, 43 PS §206, et seq.

Appellants contend that the order of the court below contravenes the Labor Anti-Injunction Act, which prohibits the issuance of an injunction in a labor dispute except in specifically enumerated situations spelled out in the 1939 amendment to that Act (Act of June 9, 1939, P. L. 302). Appellees contend that the picketing falls within two of the exceptions to the Labor Anti- Injunction Act established by the 1939 amendment (43 PS §206d), which provides that the Act does not apply in any case: "(b) Where a majority of the employes have not joined a labor organization . . . and any labor organization or any of its officers, agents, representatives, employes or members engages in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization. (c) Where any person, association, employe, labor organization, or any employe, agent, representative, or officer of a labor organization engages in a course of conduct intended or calculated to coerce an employer to commit a violation of the Pennsylvania Labor Relations Act of 1937 or the National Labor Relations Act of 1935.". The Pennsylvania Labor Relations Act, as amended (43 PS §211.6), provides that it shall be an unfair labor practice for an employer:

"(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act . . . (c) By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization: . . .". The application of these statutory provisions to the instant case may be summarized as providing that picketing may be enjoined if it is intended or calculated to coerce appellees by discrimination or otherwise to compel or require their employes to prefer or become members of any labor union.

Where an employer, the operation of whose business is dependent upon deliveries of materials by members of another union, is picketed by persons other than his own employes, a certain degree of economic loss to the employer is almost inevitable. This Court has never held that economic loss to an employer as an incident to a bona fide effort by a union to persuade his employes to join a union was, of itself, sufficient to warrant restraint of picketing by a court of equity. Peaceful picketing by a reasonable number of non-employes may be restrained, however, where its primary or paramount purpose is to coerce the employer to compel his employes to join a union: *Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776*, 373 Pa. 19 (1953), 94 A. 2d 893; *Phillips et al. v. United Brotherhood of Carpenters and Joiners of America et al.*, 362 Pa. 78 (1949), 66 A. 2d 227; *Wilbank et ux. v. Chester and Delaware Counties Bartenders, Hotel and Restaurant Employees Union et al.*, 360 Pa. 48 (1948), 60 A. 2d 21. The constitutional prohibition against restraining picketing as an aspect of freedom of speech applies to picketing which has as its primary purpose the persuasion of employes. Unions have no constitutional right to coerce employers to aid in the accomplishment of union objectives by the use of picketing.

If such is the primary or paramount purpose of the picketing and it is enforced by causing severe and irreparable economic loss to the employer, it may be enjoined.

Determination of the legal issue is thus dependent upon ascertainment of the primary or paramount purpose of the picketing. Appellants do not dispute this, but rather take the position that, in order to show such primary or paramount purpose, there must be in effect a specific demand upon the employer by the union for recognition, and picketing because of a refusal by the employer. It is true that, in such a case, the inference of unlawful purpose is readily made. However, even in the absence of a direct demand upon the employer by the union, the purpose of the picketing may, nevertheless, be just as clear. In the instant case the uncontradicted evidence shows that the statement on the placards carried by the pickets: "Union Standards Are Not Being Observed On This Project" (and there is no evidence as to the truth or falsity of this accusation), was not directed at the employes. The pickets and the union made no effort to communicate with the employes otherwise, or to establish any occasion when the employes could meet or in any way express their sentiments with respect to joining the union; the pickets were stationed only at the driveway entrances, which were the only means of ingress for trucks carrying essential supplies; there is no evidence that the employes also used these driveways; the picketing was rendered effective not by the pickets, but by two "supervisors" who left their parked car to stop all trucks approaching the building project and talk to the truck drivers; and there was no labor dispute between appellees and their employes. On these undisputed facts, the purpose of the picketing clearly appears to have been directed at the employer, not at the employes. Any

inference to the contrary flies in the face of the undisputed evidence.

The court below had jurisdiction and the injunction properly issued.

The order and decree of the court below is affirmed, costs to be paid by appellants.

Mr. Justice MUSMANNO dissents.