## Anchorage, Inc. *v.* Waiters & Waitresses Union, Appellant.

548

Argued November 22, 1955. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Louis H. Wilderman,* with him *Richard H. Markowitz* and *Wilderman & Markowitz,* for appellants.

*Marcus Manoff,* with him *Dilworth, Paxson, Kalish & Green,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 4, 1956:

This appeal is from a decree of the court below enjoining the defendant Union from picketing plaintiff's place of business.

The principles governing the issuing of injunctions against picketing in labor disputes, so far as here pertinent, are well established:

(1) An injunction may not be issued against picketing carried on solely for the purpose of persuading non-union employes to join the union, or for the purpose of advertising the fact, if it be a fact, that the employes are on strike: *Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776*, 373 Pa. 19, 21, 22, 94 A. 2d 893, 895; *Pappas v. Local Joint Executive Board*, 374 Pa. 34, 36, 37, 96 A. 2d 915, 916, 917; *Wilkes Sportswear, Inc. v. International Ladies' Garment Workers' Union*, 380 Pa. 164, 169, 110 A. 2d 418, 420, 421; *Sansom House Enterprises, Inc. v. Waiters & Waitresses Union, Local 301, AFL.*, 382 Pa. 476, 481, 115 A. 2d 746, 749. And where the object of the picketing is lawful the mere fact that it may cause economic loss to the employer does not justify its restraint by injunction: *Baderak v. Building and Construction Trades Council*, 380 Pa. 477, 482, 112 A. 2d 170, 173.

(2) Where the object of the picketing is unlawful it is properly enjoinable: *International Brotherhood of Teamsters Union, Local 309 v. Hanke*, 339 U. S. 470; *Building Service Employees International Union, Local 262 v. Gazzam*, 339 U. S. 532; *Wilbank v. Chester and Delaware Counties Bartenders, Hotel and Restaurant Employees Union*, 360 Pa. 48, 50, 60 A. 2d 21, 22; *Phillips v. United Brotherhood of Carpenters and Joiners of America*, 362 Pa. 78, 82, 66 A. 2d 227, 228; *Wortex Mills, Inc. v. Textile Workers Union of America, C. I. O.*, 369 Pa. 359, 369, 85 A. 2d 851, 857; *San-*

*som House Enterprises, Inc. v. Waiters & Waitresses Union, Local 301, AFL.,* 382 Pa. 476, 480, 115 A. 2d 746, 748.

(3)    The object of picketing is unlawful and therefore enjoinable if its purpose is to coerce the employer to compel or require his employes to join the union: *International Brotherhood of Teamsters Union, Local 309 v. Hanke,* 339 U. S. 470; *Wilbank v. Chester and Delaware Counties Bartenders, Hotel and Restaurant Employes Union,* 360 Pa. 48, 52, 60 A. 2d 21, 23; *Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776,* 373 Pa. 19, 22, 94 A. 2d 893, 895; *Baderak v. Building and Construction Trades Council,* 380 Pa. 477, 482, 112 A. 2d 170, 173.    The Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, §4, as amended, excepts from its prohibtion against the issuing of an injunction cases "Where a majority of the employes have not joined a labor organization, . . . and any labor organization . . . engages in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization."

(4)    The object of picketing is unlawful and therefore enjoinable if its purpose is to coerce the employer to bargain with a non-representative union and sign a contract with it which would interfere with his employes' right to choose their own bargaining representative: *Building Service Employees International Union, Local 262 v. Gazzam,* 339 U. S. 532; cf. *International Brotherhood of Electrical Workers v. National Labor Relations Board,* 341 U. S. 694.    The Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, §4, as amended, excepts from its prohibition against the issuing of an injunction cases "Where any . . . labor organization . . . engages in a course of conduct intended or calculated to coerce an employer to commit a violation of the

Pennsylvania Labor Relations Act of 1937 or of the National Labor Relations Act of 1935," and the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, §6, as amended, provides that "It shall be an unfair labor practice for an employer—(a) to interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act"; such a right being (§5) "the right to self-organization, . . . to bargain collectively through representatives of their own choosing." It is also declared to be an unfair labor practice (§6(c)) for an employer "By discrimination in regard to hire or tenure of employment, or any term or condition of employment, to encourage or discourage membership in any labor organization."

(5) Picketing may be enjoined if *one* of its objects is unlawful even though not the *sole* object; *National Labor Relations Board v. Denver Building and Construction Trades Council,* 341 U. S. 675, 689; *International Brotherhood of Electrical Workers v. National Labor Relations Board,* 341 U. S. 694, 700; *Local 74, United Brotherhood of Carpenters and Joiners of America, A. F. of L. v. National Labor Relations Board,* 341 U. S. 707, 713.

The problem here involved, as in most such cases, is to apply these principles to the particular facts in order to ascertain the primary or paramount purpose of the picketing and whether the findings of the court below in regard to that question are justified by the evidence.

Plaintiff, Anchorage, Inc., operates a restaurant and night club at 4501 E. River Drive, Fairmount Park, Philadelphia, extending through to 4500 Ridge Avenue. Defendant, Waiters and Waitresses Union, Local 301, is an unincorporated labor organization. In December, 1948, the Pennsylvania Labor Relations Board conducted an election among the waitresses em-

ployed by Anchorage in order to select their collective bargaining representative, as a result of which the Board, by a final decree in February, 1949, certified Local 301 as such representative; this decree was sustained by the Court of Common Pleas on appeal. Meanwhile negotiations for a collective bargaining agreement proceeded between the Anchorage and the Local; the latter demanded a contract with a closed shop provision which Anchorage refused, whereupon on March 18, 1949, the Local called a strike. Nine of the waitresses responded to the call and on the following day, March 19, 1949, commenced picketing plaintiff's establishment. The Local claims that the picketing was only for the purpose of inducing the non-union employes to join the Union and of publicizing the strike and the fact that Anchorage was a non-union establishment. Anchorage, on the other hand, contends that the real object was to compel it to enter into a contract providing for a closed shop.

The picketing which was thus started continued down to the entry of the permanent injunction by the court below on February 8, 1954, a period of some five years, during all of which time the pickets carried signs reading as follows: "Anchorage, Inc. employes on strike. We earnestly request our friends and sympathizers not to patronize. Local 301, Hotel and Restaurant Employees and Bartenders International Union, Affiliated with A. F. of L." The certification of Local 301 as the collective bargaining representative expired on December 28, 1949, but the Local still continued thereafter to demand that Anchorage bargain with it and agree to institute a closed shop. In March, 1951, Anchorage filed with the Labor Relations Board a petition seeking the determination and certification of a lawful collective bargaining representative of its employes in a more comprehensive unit than merely the

waitresses. The Local, demanding that Anchorage reinstate six of the waitresses who had gone out on strike, filed with the Board a charge that Anchorage was committing unfair labor practices by refusing to make such reinstatements and to bargain with the Local as the alleged representative of the employes. The Board dismissed these charges and the Local's appeal from its order was dismissed by the Court of Common Pleas in September, 1952. Thereupon the Board proceeded to a hearing on the petition of Anchorage for an election but the Local withdrew from the proceedings and admitted that, at least since March, 1951, it did not represent the majority of the employes in the unit for which an election was to be held, but only the striking waitresses; accordingly the Board, in February, 1953, dismissed the petition of Anchorage for the reason that the question as to representation no longer existed. Anchorage then filed its complaint in the present case to enjoin the picketing which, as already stated, had proceeded without interruption since March, 1949.

It is clear from the record that, whatever the ostensible purpose of the picketing, its real object was to compel the employer—notwithstanding the fact that the Local had ceased to be the collective bargaining representative of the employes—to bargain with it and agree to the maintenance of a closed shop and thus coerce the employer into forcing its employes to join the Union. The Union insists that none of its officials made any demand on Anchorage for a labor contract after September, 1951, but such illegal purpose may be established even in the absence of evidence of a direct demand by the Union for recognition: *Baderak v. Building and Construction Trades Council*, 380 Pa. 477, 483, 112 A. 2d 170, 173; *Sansom House Enterprises, Inc. v. Waiters & Waitresses Union, Local 301, AFL.*, 382 Pa. 476, 483, 115 A. 2d 746, 750. The

picketing had begun during the period when the Local was the certified collective bargaining representative and therefore was entitled to seek an agreement providing for a closed shop, so that at that time it obviously could not have been designed to organize the employes. And even after the Union, as already stated, had ceased to be such representative it continued its demands for a collective bargaining agreement and its counsel claimed as late as the hearing before the Pennsylvania Labor Relations Board in November, 1952, that the Local was the certified collective bargaining representative and made the complaint that Anchorage had refused to bargain collectively with it. The banners carried by the pickets all through the five years indicated very clearly that the purpose was not primarily to organize the employes but to coerce the employer—by causing him otherwise to suffer grave economic loss—to bargain with it, accede to its demands for a closed shop, and force the employes to join the Union, thus compelling Anchorage to commit the unfair labor practices specified in the Labor Relations Act. Certainly the request on the banners that the friends and sympathizers of the Local should not patronize plaintiff's restaurant had no relevancy whatever to an appeal to the employes to join the Union but could be intended only to damage or destroy the business of the employer until it should succumb to the Local's demands. Incidentally, the legend on the banners that employes were on strike was false, or at least became so years later when the waitresses who had gone out on strike had admittedly taken and remained in other positions as good as or better than those they had had at Anchorage, and which positions they still hold. While the relationship existing between employer and employe is not necessarily ended by a strike there certainly comes a time when it must be regarded as ter-

minated.* And a final proof that the purpose of the picketing was coercion of the employer and not to organize the employes was the fact that, until enjoined by the court, it continued uninterruptedly for a period of approximately five years. It is, of course, true that picketing which is lawful does not necessarily become unlawful merely by the extended duration of time during which it may be carried on, but its persistence during such an extraordinary period is at least an evidential factor pointing inevitably to the conclusion that its real object was the harassment and oppression of the employer and not to carry on for so many years an attempt to induce the employes voluntarily to join the Union, which, if not successful within a reasonably limited period certainly could never succeed at all. Nor is there any evidence that at any time throughout the years of picketing any officer, agent or member of Local 301 ever approached the waitresses employed by Anchorage or otherwise contacted them or sought to persuade them to become members of the Union.

For all the reasons thus stated we are of opinion that the purposes of the Local, as properly found by the court below, were to force plaintiff to enter into a collective bargaining agreement with it at a time when it was not the representative of the employes or of any of them, and, further, to coerce Anchorage to compel its employes to join the Union, both of which objectives, if successful, would have caused Anchorage to commit violations of the Pennsylvania Labor Relations Act.

Decree affirmed at the cost of appellants.

Mr. Justice MUSMANNO dissents.

---

* Section 3 of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended, defines the term "employe" as including "any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute, or because of any unfair labor practice, *and who has not obtained any other regular and substantially equivalent employment.*"