## Amore v. Beaver County Building & Construction Trade Council

*C. John Tillman*, for plaintiffs.
*John D. Ray*, for defendants.

McCREARY, P. J., August 20, 1956.—On August 1, 1956, plaintiffs above named filed a complaint in equity against defendants above named, asking for a preliminary injunction, ex parte, upon the filing of injunction affidavits and a bond in an amount to be fixed by the court. After a short argument, the court refused to grant a preliminary injunction, ex parte, but did direct that a rule issue requiring defendants to show cause why such an injunction should not issue, the rule returnable August 6, 1956, on which day a hearing was to be had.

On the day of the return of the rule a hearing was had at which all parties were present in person and were represented by counsel. At the close of the testimony, on the afternoon of August 7, 1956, the court, made up of two hearing judges, McCreary and Sohn, made an order in language as follows:

"Now, August 7, 1956, after hearing the witnesses for the plaintiffs and defendants, the rule issued requiring the defendants to show cause why a preliminary injunction should not issue as prayed for in Plaintiffs' complaint, is discharged at this time; it appearing to the Court that the plaintiffs have not sustained the burden of showing that the acknowledged peaceful picketing on the project in question is being carried on in any illegal manner, or for any illegal purpose; and having failed to sustain, by the fair weight and preponderance of the evidence, the existence of a situation which convinces the Court that the object of the picketing is unlawful, and therefore enjoinable, in that it has failed to convince the Court that its purpose is to coerce the employers to compel or require their employees to join the union.

"The Court retains jurisdiction of the Bill for the purpose of determining, after final hearing, whether or not the defendants, or any of them, should be enjoined as prayed for in the complaint.

"It is further ordered that the motion made by the defendants' counsel that the Bill be dismissed as to all parties defendant except the Beaver County Building & Construction Trade Council, and its officers, be refused at this time. Further consideration of said motion to be given after final hearing."

On August 9, 1956, an appeal was taken to the Supreme Court of Pennsylvania, and on August 10, 1956, pursuant to rule 43, hearing judges were notified to file of record at least a brief statement, in the form of an opinion, of the reasons for the order made. This

opinion is filed in obedience to the mandate of rule 43, although the copy of the notice served on the members of the court does not specify the matter about which appellant complains.

The complaint, in substance, avers that plaintiffs are engaged in building houses on a recorded plan of lots called "North View" in the Township of Brighton, Beaver County, that in building houses on said plan of lots, plaintiffs employ three men directly, and have let out various phases of the work of building to subcontractors who also employ men to do the subcontracted work, that defendants are an association of labor unions and their officers, and a labor union and its various officers and agents.

They further allege that on or about April 24, 1956, defendants began to picket the said plan of lots with the purpose in view of compelling plaintiffs to coerce all their employes, their subcontractors and their employes either to join the appropriate one of the various unions comprising defendant Building & Construction Trade Council, which includes the International Brotherhood of Electrical Workers, Local 712, or be discharged.

Plaintiffs further allege that, by reason of defendants' coercion, picketing and display of signs, various suppliers of materials and equipment and their truck drivers have refused to cross picket lines to deliver supplies, materials and equipment to said plan of lots in accordance with their contracts with plaintiffs, and further that Duquesne Light Company's employes, because of said picketing, have refused to connect the electric power lines to the houses on said plan of lots.

There is no allegation, nor was there any proof, of any violence on the two man picket line, and no attempt to show that the pickets at any time even talked to any supplier of materials or any of his drivers or employes. There is neither allegation nor testimony

indicating that any of defendants, or their two pickets, ever attempted to shut down the job or to interfere with either plaintiffs, their employes, the subcontractors or their employes or any supplier of materials from peaceably prosecuting their various pursuits on the job. From about April 16 to the middle of July there was only one picket on the job, he being seated in an automobile near the entrance to the project, the automobile having a sign on it bearing the legend: "This job is not being built 100% A. F. L. building trades." This is the truth; it is not being so built.

At the hearing plaintiffs called, as for cross-examination, Michael Namadan, the business agent for International Brotherhood of Electrical Workers, Local 712, A. F. L., he being also a delegate from his local to the Beaver County Building & Construction Trade Council, and asked him about the meeting of the trade council at which the council decided to picket plaintiffs' project. He answered that it was decided at the meeting to picket the job for the purpose of persuading nonunion employes of plaintiffs and their subcontractors' employes to join the union. The minutes of the meeting were produced and they corroborated Mr. Namadan. There was no evidence produced by plaintiffs which convinced the court that the picketing was for any other purpose. It is true that many of the suppliers of materials, who have contracted to furnish building materials and electric current to the project, have union drivers who refuse to cross the picket line, but that affords the court no ground for granting injunctive relief. Neither does it throw any light on the question of whether the picketing is being carried on by defendants for the purpose of coercing the employes to join the union.

As a matter of fact, the testimony shows that neither defendants nor any of its agents ever entered on the building site to converse with any of the artisans or

workmen after plaintiffs erected signs on the premises reading "No Trespassing under penalty of $100.00 fine". Before these signs were erected some of the business agents of the building trade council entered on the premises to talk with the workmen to persuade them to join the union. The workmen replied that they had nothing against the union, but that it was up to "Amore". When the agents went to talk with Amore about the matter he answered that he had no objection to the men joining the union, but that it was up to the men. Thereafter the "No Trespassing" signs were erected by plaintiffs and no further conversation was had with the workmen.

As far as the Duquesne Light Company workmen are concerned, they belong to a union and refused to cross the picket line to connect the electric power lines with the houses on the project. However, there are pickets on duty only between the hours of 8 a.m. and 4:30 p.m., five days a week. When the first house on the project of 25 houses was completed, plaintiffs and the purchaser of no. 1 house experienced no difficulty in getting the Duquesne Light workmen to hook on to the power lines and connect them with the house. It was done, however, after 4:30 p.m., after the pickets had gone home.

This case falls clearly within the doctrine of the cases cited by Mr. Chief Justice Horace Stern, in the case of Anchorage, Inc., v. Waiters & Waitresses Union, Local 301, A. F. L., 383 Pa. 547, when he said, p. 549:

"An injunction may not be issued against picketing carried on solely for the purpose of persuading the non-union employes to join the union, or for the purpose of advertising the fact, if it be a fact, that the employes are on strike: Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776, 373 Pa. 19, 21, 22 . . . ; Pappas v. Local Joint Executive Board, 374 Pa. 34, 36, 37 . . . ; Wilkes Sportswear, Inc. v. International

Ladies' Garment Workers' Union, 380 Pa. 164, 169 . . . ; Sansom House Enterprises, Inc. v. Waiters & Waitresses Union, Local 301, AFL, 382 Pa. 476, 481. . . . And where the object of the picketing is lawful the mere fact that it may cause economic loss to the employer does not justify its restraint by injunction: Baderak v. Building and Construction Trades Council, 380 Pa. 477, 482. . . ."

It does not fall within that line of cases referred to by the Chief Justice when he said, pp. 549, 550:

"Where the object of the picketing is unlawful it is properly enjoinable: International Brotherhood of Teamsters Union, Local 309 v. Hanke, 339 U. S. 470; Building Service Employees International Union, Local 262 v. Gazzam, 339 U. S. 532; Wilbank v. Chester and Delaware Counties Bartenders, Hotel and Restaurant Employees Union, 360 Pa. 48, 50 . . . ; Phillips v. United Brotherhood of Carpenters and Joiners of America, 362 Pa. 78, 82 . . . ; Wortex Mills, Inc. v. Textile Workers Union of America, C. I. O., 369 Pa. 359, 369 . . . ; Sansom House Enterprises, Inc. v. Waiters & Waitresses Union, Local 301, AFL, 382 Pa. 476, 480. . . .

"The object of picketing is unlawful and therefore enjoinable if its purpose is to coerce the employer to compel or require his employes to join the union: International Brotherhood of Teamsters Union, Local 309 v. Hanke, 339 U. S. 470; Wilbank v. Chester and Delaware Counties Bartenders, Hotel and Restaurant Employes Union, 360 Pa. 48, 52 . . . ; Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776, 373 Pa. 19, 22 . . . ; Baderak v. Building and Construction Trades Council, 380 Pa. 477, 482. . . . The Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, §4, as amended, excepts from its prohibition against the issuing of an injunction cases 'Where a majority

of the employes have not joined a labor organization, . . . and any labor organization . . . engages in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization'."

The distinction seems to be found in the answer to the question: "What is the primary purpose of the peaceful picketing?" If it is carried on solely for the purpose of persuading nonunion employes to join the union, it is not enjoinable. If it is carried on for the purpose of coercing the employer to compel his employes to join a union, it is unlawful and therefore enjoinable.

There is no evidence of the existence of the latter purpose in this case, unless it can be said that the refusal of teamsters, who drive the trucks carrying the building materials and supplies, to cross the picket line, as a matter of their own choice and their desire to follow the practices of their own union, must, in all cases, be construed as coercion to compel the employer to force his employes to join a union.

It is absolutely clear from the record that plaintiffs are encountering difficulty in getting supplies from firms whose drivers belong to a union, and that, as a result thereof, plaintiffs are suffering economic loss and delay in building schedule, but this does not make the peaceful picketing enjoinable: Anchorage, Inc. v. Local 301 A. F. L., supra.

Finally, plaintiffs argue that the equities of the case entitle them to a preliminary injunction. They insist that no harm can be done to defendants by the court entering an order compelling them to remove the one or two pickets stationed near the entrance to the project. On the other hand, they claim that plaintiffs will be harmed irreparably by the delay in securing deliveries of materials and electricity, necessarily

654

encountered by them pending an appeal, if the court refuses the preliminary injunction. We cannot agree. If we had granted the preliminary injunction restraining picketing, as prayed for in subsection (*a*) of the prayer for relief, the job would be completed before the appeal could be heard and decided, and the very purpose of peaceful picketing for organization purposes would be completely frustrated; on the other hand, the refusal of a preliminary injunction preserves the status quo and does not deprive plaintiffs from getting materials and supplies from sources other than those whose drivers are members of a union, nor does it deprive them of their right to get electrical connections by order of the P. U. C. or by connecting power with the houses on the project after the one or two pickets leave the job at the end of the work day, namely, 4:30 p.m.

We find: (1) That the picketing on the project is for the purpose of persuading the nonunion employes to join the union; (2) that the picketing is not for the purpose of coercing the employer and employes to compel or require the employes to join a union; (3) the peaceful picketing is not enjoinable, and (4) there is no strike or lockout, or violence, intimidation or coercion.

The cases of Baderak v. Building and Construction Trades Council, 380 Pa. 477, and Sansom House Enterprises, Inc. v. Waiters & Waitresses Union, Local 301, A. F. L., 382 Pa. 476, on which plaintiffs rely, are clearly distinguishable on their facts.

For the foregoing reasons we entered the order refusing a preliminary injunction in the language quoted on page 2 of this opinion.