West Penn Township School District, Appellant, *v.* International Brotherhood of Electrical Workers.

Argued October 1, 1958.   Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*Bruce E. Cooper,* with him *Sparks A. Reese, John Arnold Crisman,* and *Rhoads, Sinon and Reader,* for appellants.

*Harry W. Lightstone,* with him *John E. Lavelle,* for appellee.

OPINION BY MR. JUSTICE BELL, October 24, 1958:

The School District of West Penn Township, The West Penn Township School Authority, Boyd H. Kline, a general contractor, Robert B. Waice, a plumbing and heating contractor, and William A. Donmoyer Co., a Pennsylvania corporation which is engaged in the electrical contracting business, filed a complaint seeking a preliminary injunction against International Brotherhood of Electrical Workers, Local Union 686, Robert B. Reeser, John Doe, Plumbers, Steamfitters & Apprentices, A.F.L. Local 517, Vincent Zimmers, Richard Roe, to restrain the picketing which was carried on by defendants. Complainants have appealed from the order and decree of the Court of Common Pleas, which denied a preliminary injunction.

The Authority, pursuant to advertising and the receipt of sealed bids, awarded contracts on or about December 20, 1956, to Kline, as general contractor, to Waice, a plumbing and heating contractor, and to Donmoyer Co., as electrical contractor. These contracts were for the construction of, and the plumbing, heating and electrical work in, an elementary school for 400 children to be built on the premises owned by the Authority in West Penn Township. In accordance with the Act of May 2, 1945, P.L. 382, §10, as amended, 53 PS §312, contracts had to be awarded to the lowest responsible bidder. Kline, Waice and the Donmoyer Co. were respectively the lowest responsible bidders.

The contract between the Authority and the general contractor provided that the school building was

to be completed on or before February 28, 1958. The Authority has no labor contracts with any labor union. Kline has twenty-nine employees, including carpenters, masons, and laborers, all union members but none a member of a defendant union. Waice has four employees who are plumbers, none of whom is a member of any union. Donmoyer Co. has two employees who are electricians but are not members of any union.

In December, 1956, just prior to the award of the contracts, Robert B. Reeser, business agent or manager for the International Brotherhood, notified the Authority (according to the testimony) that "if they hire nonunion contractors there would be trouble". Reeser also told the Authority that he was there to have Donmoyer join the union, and that Donmoyer did not pay the prevailing union wages. Reeser also protested, by telegram, any award to Donmoyer because he was a nonunion contractor and did not pay the prevailing wage rates. Defendant Zimmers, prior to the final awarding of the bids, urged the Secretary of the Municipal Authority to reconsider the award of contracts to nonunion contractors and award them instead to union contractors, even though the Act required the Authority to accept the lowest, qualified, responsible bidder. The testimony also showed that Reeser told Donmoyer he was there to have Donmoyer join the union. Zimmers told Waice that if he wouldn't sign as a union contractor for the West Penn School project "I'll take the necessary steps to see that you wouldn't work the West Penn Township job."

None of this testimony was denied or otherwise contradicted by the defendants.

On or about March 4, 1957,* Kline, the general contractor, and his employees commenced work on the school building in pursuance of the contract. On or

---

* One witness fixed the date as February 20, 1957.

about April 1, 1957, Waice and his employees commenced the plumbing and heating work. Early in April, 1957, Donmoyer Co. and its employees commenced the electrical work.

By July 2, 1957, the gypsum roof decking of the school building had been installed and the roofers were prepared to cover the gypsum with a built-up roof, the gypsum being subject to deterioration by the elements. On that day defendants Reeser, Zimmers and two other pickets commenced peaceful picketing of the premises on behalf of the defendant unions. As a result of the picket line, those employees of Kline, the general contractor, who were union members,* refused to continue working on the school building, and since the general contractor was not able to proceed with his work, the work to be performed by Waice and Donmoyer could not be performed. It is conceded that as a result of the picketing, all work on the school building has come to a halt and today the school is less than one-third completed. Irrespective of where the fault lies, the picketing has caused very substantial loss of time, money and material to the Authority and to the School District and to Kline and Waice and Donmoyer Co., and was highly detrimental to the welfare of the children and the community of West Penn Township.**

The evidence presented by plaintiffs was clear and unambiguous, and it was, we repeat, undenied and uncontradicted by any of the defendants.

---

* Members of a different union.

** As one witness, Mrs. Breiner, testified, concerning her talk with Zimmers: "He said we were there, fighting the contractors battle for them, and I then said how would he like his children to go to our one-room schools with only water once a day, with outside toilets with air coming in that the teachers had to put papers in the windows. . . . He said he didn't want his children to go to schools like that; that his children went to good schools."

Defendants produced one witness and only one. He testified that the pickets carried a sign which read: "This job being picketed for organizational purposes only." Notwithstanding this legend, *none of Waice's employees or Donmoyer's employees were ever approached to join the union.*

The questions here involved must be resolved in the light of the following principles: "Our uniform rule is that, on an appeal from a decree which refuses, grants or continues a preliminary injunction, we will look only to see if there were any apparently *reasonble grounds** for the action of the court below, and we will not further consider the merits of the case or pass upon the reasons for or against such action, unless it is plain that no such grounds existed, or that the rules of law relied on are palpably wrong, or clearly inapplicable: Commonwealth v. Katz, 281 Pa. 287, 288, 126 A. 765; Lesher v. Thomas S. Cassner Co., 285 Pa. 43, 44, 131 A. 657; Murray v. Hill, 359 Pa. 540, 541, 59 A. 2d 877; Cohen et al. v. A. M. Byers Company et al., 363 Pa. 618, 619, 70 A. 2d 837": *Lindenfelser v. Lindenfelser,* 385 Pa. 342, 123 A. 2d 626. See also: *New Kensington v. Municipal Authority,* 383 Pa. 182, 118 A. 2d 149.

It is clearly settled that an appellate court is able to draw its own inferences, deductions and conclusions, as well as determine the proper legal interpretation to be placed upon the evidence; and this is especially true when plaintiffs' material testimony has not been contradicted or impeached.

In *Eways v. Reading Parking Authority,* 385 Pa. 592, 124 A. 2d 92, the court said (page 601): " 'Findings of fact made by a Chancellor who saw and heard the witnesses, when confirmed by the Court en banc, will

---

* Italics ours.

not be reversed on appeal if they are supported by adequate evidence: Pregrad v. Pregrad, 367 Pa. 177, 80 A. 2d 58; Barrett v. Heiner, 367 Pa. 510, 80 A. 2d 729. However, that well-settled principle is confined to findings which are true and genuine findings of fact. "With respect to [a] inferences and deductions from facts and [b] conclusions of law, both the Court en banc and the appellate Courts have the power to draw their own inferences and make their own deductions and conclusions: Barrett v. Heiner, 367 Pa. 510, 80 A. 2d 729; Noonan Estate, 361 Pa. 26, 63 A. 2d 80; Payne v. Winters, 366 Pa. 299, 77 A. 2d 407; Smith v. Smith, 364 Pa. 1, 70 A. 2d 630.": Kalyvas v. Kalyvas, 371 Pa. 371, 375-376, 89 A. 2d 819.' "

In *Westinghouse Electric Corporation, Appellant, v. United Electrical, Radio & Machine Workers of America (CIO) Local 601 et al.,* 353 Pa. 446, 449, 46 A. 2d 16, this Court reversed the lower Court's refusal to issue an injunction and speaking through Mr. Justice (later Chief Justice) STERN said (page 449) : "All the testimony, . . . was presented by plaintiff corporation; defendants offered no evidence and, as none of plaintiff's testimony was contradicted or impeached, there is no dispute on the present record as to the facts; the question for determination is purely one of the proper legal interpretation to be placed upon those facts. Under such circumstances, if the record discloses a fundamental misconception of the controlling law, the ordiary rule that the granting or refusal of a preliminary injunction is within the reasonable discretion of the court of first instance becomes inapplicable: Casinghead Gas Co. v. Osborn, 269 Pa. 395, 112 A. 469; Philadelphia Record Co. v. Curtis-Martin Newspapers, Inc., 305 Pa. 372, 378, 157 A. 796, 798."

Peaceful picketing for organizational or other lawful purposes is legal and is protected by the Constitu-

tion. Moreover, peaceful picketing, when conducted in a lawful manner and for lawful purposes, cannot be enjoined merely because there is no immediate employer-employee dispute or because the pickets were not employees of the employer. *Wortex Mills v. Textile Workers Union of America*, 369 Pa. 359, 85 A. 2d 851.

However, it is equally well settled that a State Court may enjoin peaceful picketing, if it is conducted in an unlawful manner or for an unlawful purpose.

In *Anchorage, Inc. v. Waiters & Waitresses Union*, 383 Pa. 547, 119 A. 2d 199 this Court, speaking through Mr. Chief Justice STERN, said (page 549) : "(2) Where the object of the picketing is unlawful it is properly enjoinable: International Brotherhood of Teamsters Union, Local 309 v. Hanke, 339 U. S. 470; Building Service Employees International Union, Local 262 v. Gazzam, 339 U. S. 532; Wilbank v. Chester and Delaware Counties Bartenders, Hotel and Restaurant Employees Union, 360 Pa. 48, 50, 60 A. 2d 21, 22; Phillips v. United Brotherhood of Carpenters and Joiners of America, 362 Pa. 78, 82, 66 A. 2d 227, 228; Wortex Mills, Inc. v. Textile Workers Union of America, C.I.O., 369 Pa. 359, 369, 85 A. 2d 851, 857; Sansom House Enterprises, Inc. v. Waiters & Waitresses Union, Local 301, A.F.L., 382 Pa. 476, 480, 115 A. 2d 746, 748.

"(3) The object of picketing is unlawful and therefore enjoinable if its purpose is to coerce the employer to compel or require his employes to join the union: International Brotherhood of Teamsters Union, Local 309 v. Hanke, 339 U. S. 470; Wilbank v. Chester and Delaware Counties Bartenders, Hotel and Restaurant Employes Union, 360 Pa. 48, 52, 60 A. 2d 21, 23; Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776, 373 Pa. 19, 22, 94 A. 2d 893, 895; Baderak v. Building and Construction Trades Council, 380 Pa. 477, 482, 112 A. 2d 170, 173. . . .

"(5) Picketing may be enjoined if *one* of its objects is unlawful even though not the *sole* object: National Labor Relations Board v. Denver Building and Construction Trades Council, 341 U. S. 675, 689; International Brotherhood of Electrical Workers v. National Labor Relations Board, 341 U. S. 694, 700; Local 74, United Brotherhood of Carpenters and Joiners of America, A. F. of L. v. National Labor Relations Board, 341 U. S. 707, 713."

In *Baderak v. Building and Construction Trades Council,* 380 Pa. 477, 112 A. 2d 170, the Court, speaking through Mr. Justice CHIDSEY, said (page 482) : "Peaceful picketing by a reasonable number of non-employes may be restrained, however, where its primary or paramount purpose is to coerce the employer to compel his employes to join a union: Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776, 373 Pa. 19 (1953), 94 A. 2d 893; Phillips et al. v. United Brotherhood of Carpenters and Joiners of America et al., 362 Pa. 78 (1949), 66 A. 2d 227; Wilbank et ux. v. Chester and Delaware Counties Bartenders, Hotel and Restaurant Employees Union et al., 360 Pa. 48 (1948), 60 A. 2d 21."

The only conclusion that can reasonably be drawn from the evidence disclosed by the present record is that the defendants picketed the work for the purpose of coercing the plaintiff employers to become union-shop in order thereby to compel their employees to join the union or otherwise lose their jobs. As this constituted unlawful picketing within the contemplation of the Pennsylvania Labor Relations Act, it is of no present relevancy that the picketing may also have been for organizational purposes, as the appellees contend. The picketing should, therefore, have been preliminarily enjoined by the Court below pending final hearing and decree.

Without determining or allocating the blame, it is obvious that the delay in the construction of this school has been highly detrimental and inexcusable. We therefore make the following Order:

The decree of the Court below is reversed and the record remanded with directions that a preliminary injunction issue forthwith in accordance with the prayer of the plaintiffs' complaint; that the defendants answer over on the merits within ten days of the remand hereby ordered; that a final hearing be held on the complaint and answer within five days of the filing of the defendants' answer or answers; that an adjudication with decree nisi be filed within fifteen days of the commencement of the final hearing; and that any exceptions to the adjudication and decree nisi be filed and disposed of within ten days of the entry of the decree nisi, to the end that a final decree will be entered in not more than forty days from the date of our remand of the record; the costs of this appeal to abide the event.

Mr. Justice MUSMANNO and Mr. Justice COHEN would affirm the decree of the Court below.