## Three Chefs, Inc., v. Waiters' and Waitresses' Union, Local 301, A. F. of L.

*Samuel P. Lavine*, for plaintiff.

*Richard H. Markowitz*, for defendants.

REIMEL, J., April 26, 1962.—This matter comes before the court on defendants' exceptions to the chancellor's adjudication enjoining defendants from picketing plaintiff's premises.

Plaintiffs, on November 14, 1960, instituted an action in equity seeking injunctive relief against picketing by defendants of a restaurant and that part of a shopping center in which the restaurant is located. A hearing on a rule for a preliminary injunction was held, from which an injunction issued restraining the pickets pending final hearing. Thereafter, the parties stipulated that the court consider the testimony taken on the rule for preliminary injunction as on final hearing. Thereto, forthwith, the court rendered its adjudication decreeing that the injunction issue perpetually, to which adjudication defendants have filed exceptions.

Defendants Selma Wright and Catherine Kazana were discharged on November 7, 1960. After their discharge they appealed to Local 301 for assistance in obtaining reinstatement. Mr. Turchi, business manager of the union, called plaintiff, represented to him that Local 301 represented a majority of Three Chefs' employes, and attempted to persuade plaintiff to reinstate the discharged employes under threat of strike. Upon Three Chefs' refusal to yield to the union's demands, picketing was instituted.

The union contends that the issuance of the injunction was improper and unauthorized. In support of its contentions, the union asserts that the findings of fact and conclusions of law by the learned chancellor were in error; that because a labor dispute existed and the union represented a majority of Three Chefs' em-

ployes, the Labor Anti-Injunction Act of June 2, 1937, P.L. 1198, sec. 1, as amended by the Act of June 9, 1939, P.L. 302, sec. 1, et. seq., 43 PS §206a, prevented the issuance of the injunction; and that the picketing was constitutionally protected because it was for the lawful purpose of organization.

Three Chefs contends that no labor dispute existed; that the union did not represent a majority of the employes; that the Anti-Injunction Act did not apply; and that the true purpose of the picketing was coercion of the employer by the union.

The chancellor found that no controversy of any kind existed between Local 301 and Three Chefs prior to the picketing. An examination of the testimony leads us to the same conclusion. The evidence reveals that the union and Three Chefs had not one iota of contact prior to the time when Selma Wright and Catherine Kazana were discharged, and further, that prior to their discharge, there was no union activity at the Three Chefs restaurant. The union's contention that the waitresses were discharged because of union activity is not borne out by the evidence. Although there appeared to be no specific precipitating event which prompted the discharge, it is clear that Selma Wright and Catherine Kazana were unsatisfactory waitresses in the eyes of their employer, which was sufficient reason for their dismissal.

The union further contends that the picketing should not have and could not have been enjoined because it represented a majority of the employes: section 4 of the Labor Anti-Injunction Act of 1937, P.L. 1198, as amended by the Act of June 9, 1939, P.L. 302, sec. 1, 43 PS §206d.

The learned chancellor specifically found that the union did not represent a majority, and the evidence does not reveal that a majority of the employes were members of the union. There is testimony to the effect

that application cards were signed by some employes. However there is no evidence as to whether these application were ever accepted or dues paid. It is particularly curious to note that many of the applicants were induced to sign application cards because of misrepresentations and mendacious statements and that when these prevarications were revealed numerous employes withdrew. The union's explanation of those prevaricating statements was that it was the usual puffing of union advantages and customary organizing tactics.

In Anchorage, Inc. v. Waiters & Waitresses Union, 383 Pa. 547, 550 (1956), the court, in an opinion by the then Chief Justice Horace Stern, held: ". . . The object of picketing is unlawful and therefore enjoinable if its purpose is to coerce the employer to compel or require his employes to join the union: International Brotherhood of Teamsters Union, Local 309 v. Hanke, 339 U. S. 470; Wilbank v. Chester and Delaware Counties Bartenders, Hotel and Restaurant Employees Union, 360 Pa. 48, 52, 60 A. 2d 21, 23; Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776, 373 Pa. 19, 22, 94 A. 2d 893, 895; Baderak v. Building and Construction Trades Council, 380 Pa. 477, 482, 112 A. 2d 170, 173. The Labor Anti-Injunction Act of June 2, 1937, P.L. 1198, §4, as amended, excepts from its prohibition against the issuing of an injunction cases 'Where a majority of the employes have not joined a labor organization, . . . and any labor organization . . . engages in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization.'

"The object of picketing is unlawful and therefore enjoinable if its purpose is to coerce the employer to bargain with a non-representative union and sign a

contract with it which would interfere with his employes' right to choose their own bargaining representative: Building Service Employees International Union, Local 262 v. Gazzam, 339 U.S. 532; cf. International Brotherhood of Electrical Workers v. National Labor Relations Board, 341 U.S. 694. The Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, §4, as amended, excepts from its prohibition against the issuing of an injunction cases 'Where any . . . labor organization . . . engages in a course of conduct intended or calculated to coerce an employer to commit a violation of the Pennsylvania Labor Relations Act of 1937 or of the National Labor Relations Act of 1935,' and the Pennsylvania Labor Relations Act of June 1, 1937, P.L. 1168, §6, as amended, provides that 'It shall be an unfair labor practice for an employer— (a) to interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act'; such a right being (§5) 'the right to self-organization, . . . to bargain collectively through representatives of their own choosing.' It is also declared to be an unfair labor practice (§6(c)) for an employer 'By discrimination in regard to hire or tenure of employment, or any term or condition of employment, to encourage or discourage membership in any labor organization.'

"Picketing may be enjoined if one of its objects is unlawful, even though not the sole object; National Labor Relations Board v. Denver Building and Construction Trades Council, 341 U.S. 675, 689; International Brotherhood of Electrical Workers v. National Labor Relations Board, 341 U.S. 694, 700; Local 74, United Brotherhood of Carpenters and Joiners of America, A. F. of L. v. National Labor Relations Board, 341 U.S. 707, 713."

The chancellor found, in his conclusions of law, that the picketing has an unlawful object and is there-

fore not protected. An examination of the testimony reaffirms this conclusion. The union contends that the picketing was for purely organizational purposes, and further, that it made no demand upon Three Chefs for either recognition or a contract. Three Chefs, on the other hand, asserts that the real purpose was to coerce the employer. To this the union responds by saying that it began an organizing campaign several months prior to November 1960, and that such efforts were quite extensive, consisting of conferences, visitations, and union meetings. The union takes the position that picketing was only to secure the return to work of the two waitresses and to persuade non-union employes to join. They assert further that it never made any demand for recognition or for a contract. It is the court's opinion that the union's position is without merit.

The union's activities, the picketing and this litigation constitutes a thinly veiled attempt by the union to voice its sentiments upon an unwilling employer and employes who rebuffed at its onset organized labor's dominating and overpowering hand.

A close examination of the picket signs leads us to the conclusion that the picketing was not directed toward the employes. The initial legend on the signs read: "Three Chefs was unfair to employes," but the inscriptions on the signs were later changed to read: "We urge all employes to join the Union." The fact that the picketing was conducted at the customer's entrance, and not in front of the employes service entrance is indicative of the union's motives.

In Phillips v. United Brotherhood of Carpenters and Joiners of America, 362 Pa. 78 (1949), then Chief Justice Horace Stern, on page 85 (footnote), said:

"Incidentally it may be noted that the placards bearing the slogan that plaintiffs were 'unfair' to the

union were themselves unfair, for they misrepresented the act. Plaintiffs admittedly never made any attempt to interfere with the endeavor of the union to induce their employes to join it. It is true that in Cafeteria Employees Union, Local 302 v. Angelos, 320 U.S. 293, 295, it was said that the words like 'unfair' are merely 'loose language . . . they are part of the conventional give-and-take in our economic and political controversies', but it is also true that the word 'unfair' means 'dishonest', 'unjust', 'employing a trick or artifice', and when used by organized labor it means 'unfriendly' to such labor. Certainly the facts here do not justify any such characterization of the attitude of plaintiffs in connection with the events which culminated in the present proceedings."

The evidence does not establish a course of conduct manifesting organizational activity. The evidence does reveal that the union, after the two employes were discharged, developed an interest in Three Chefs. Sporadic conversations and isolated discussions by the employes among themselves up to six months prior to the picketing does not resemble union organization.

In Sansom House Enterprises, Inc. v. Waiters & Waitresses Union, Local 301, AFL, 382 Pa. 476, 481 (1955), the then Chief Justice Horace Stern held:

"We come, then, to the objective upon which defendants principally rely for continuing to carry on the picketing, namely, to organize plaintiff's employes and induce them to join the Union. Such a purpose would undoubtedly be a legal and proper one because picketing which is conducted solely in order to persuade non-union employes of an establishment to join the Union is constitutionally protected and cannot be enjoined: Pappas v. Local Joint Executive Board, 374 Pa. 34, 96 A. 2d 915; Wilkes Sportswear, Inc. v. International Ladies' Garment Workers' Union, 380 Pa. 164, 110 A. 2d 418. Plaintiff, however, contends that the picket-

ing is really designed to force it to compel or require its employes to join the Union, and that the Union is engaged in a course of conduct intended or calculated to accomplish such coercion. Such picketing would be illegal and can and should be enjoined: Labor Anti-Injunction Act of June 2, 1937, P.L. 1198, section 4, as amended by the Act of June 9, 1939, P.L. 302; Wilbank v. Chester and Delaware Counties Bartenders, Hotel and Restaurant Employees Union, 360 Pa. 48, 60 A. 2d 21; Phillips v. United Brotherhood of Carpenters and Joiners of America, 362 Pa. 78, 66 A. 2d 227; Baderak v. Building and Construction Trades Council, 380 Pa. 477, 112 A. 2d 170 . . ."

The then Chief Justice Stern further held (page 483):

". . . Defendants contend that they did not make any demand upon plaintiff to enter into a union agreement, but it was said in Baderak v. Building and Construction Trades Council, 380 Pa. 477, 483, 112 A. 2d 170, 173: 'Appellants . . . take the position that, in order to show such primary or paramount purpose [of the picketing], there must be in effect a specific demand upon the employer by the union for recognition, and picketing because of a refusal by the employer. It is true that, in such a case, the inference of unlawful purpose is readily made. However, even in the absence of a direct demand upon the employer by the union, the purpose of the picketing may, nevertheless, be just as clear.' And in that case it was found, on facts quite similar to those here present, that the purpose of the picketing was clearly that of coercing the employer . . ."

The only conclusion that can reasonably be drawn from the evidence disclosed by the present record is that defendants picketed Three Chefs for the purpose of coercing it to become a union shop in order thereby to compel their employes to join the union. The legends

on the picket signs, together with the facts that no labor dispute existed and the union did not represent a majority of the employes unveils the true coercive intentions of the picketing.

We are of the opinion that the purposes of the Local, as properly found by the learned chancellor, were to force plaintiff to enter into a collective bargaining agreement with it at a time when it was not the representative of the employes, and further, to coerce Three Chefs to compel its employes to join the union. This constituted unlawful picketing within the contemplation of the act and was properly enjoined.

Wherefore, the court enters the following

### Order

And now, April 26, 1962, defendants' exceptions to the chancellor's adjudication are dismissed. Let final order be entered, permanently enjoining defendants from unlawfully picketing Three Chefs.