George A. YAGER, Acting Regional Director of the Twenty-First Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION No. 12, AFL, Respondent.

No. 18319.

United States District Court
S. D. California, Central Division.

July 25, 1955.

Findings of Fact, Conclusions of Law and Decree, Aug. 4, 1955.

Theophil C. Kammholz, General Counsel, Chicago, Ill., David P. Findling, Associate General Counsel, Winthrop A. Johns, Asst. General Counsel, Washington, D. C., Daniel J. Harrington, Chief Law Officer, 21st Region, Ernest L. Heimann, Attorney, Los Angeles, Cal., for petitioner.

David Sokol and James M. Nicoson, Los Angeles, Cal., for respondent.

YANKWICH, Chief Judge.

George A. Yager, Acting Regional Director of the Twenty-First Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, has filed a petition for injunction under § 10(l) of the National Labor Relations Act as amended, 29 U.S.C.A. § 160(l).

The petition recites that in March and April, 1955, Crook Company (herein called Crook) and William W. Shepherd and Nora D. Shepherd, co-partners doing business as Shepherd Machinery Company, (to be referred to as Shepherd) filed separate charges with the Board alleging that the respondent, International Union of Operating Engineers, Local Union No. 12, AFL, (to be referred to as "the Union") is engaged in unfair labor practices within the meaning of § 8(b), Subsection 4(A) and 4(B) of the

Act. 29 U.S.C.A. § 158(b) 4(A, B). The matter was referred to the petitioner and investigated by him. After such investigation, he has reasonable cause to believe that the charges are true and that a Complaint of the Board based thereon should issue against the respondent.

Specifically, it is alleged that since the early part of this year the Union has been engaged in a campaign to secure recognition from Crook and Shepherd as collective bargaining representatives of their employees. No certification of the Union as collective bargaining representative of any of the employees of Crook or of Shepherd has been made.

The following additional facts are given in the petition: The Union, since March 9, 1955, has picketed Crook's premises. In addition, the Union's pickets have followed Crook's employees from Crook's premises to various construction and other sites at which Crook equipment was located, and have, by picketing, orders, instructions, directions and appeals, induced and encouraged employees of other employers engaged in work at said sites, including but not limited to Yankee Body Shope, Crowell & Larson, Paving Materials Co. (herein called Yankee, Crowell, Paving respectively) to refuse to perform services for their respective employers.

Since on or about April 23, 1955, the Union by orders, directions, instructions and appeals, induced and encouraged employees of Ralph Welker and of McCammon-Wunderlich Company, (herein called Welker and McCammon-Wunderlich) excavating and grading contractors, to refuse to work or perform services for Welker and McCammon-Wunderlich Company, while employees of Shepherd were at construction sites repairing equipment leased by Welker from Shepherd and purchased by McCammon-Wunderlich from Shepherd, respectively. Since on or about March 11, 1955, respondent has engaged in, and by picketing, orders, directions, instructions, appeals, and by other means, has induced and encouraged employees of Yankee, Crowell, Paving, Welker, McCammon-Wunderlich, and of other employers, to engage in strikes or concerted refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on goods, articles, materials or commodities, or to perform services.

The petition stated that the objects of the Union's conduct were: (1) to force or require Yankee, Crowell, Paving, Welker, McCammon-Wunderlich, and other employers and persons, to cease using, selling, handling, transporting, or otherwise dealing in the products of Crook and/or Shepherd, or to cease doing business with Crook and/or Shepherd; and (2) to force or require Crook and/or Shepherd to recognize or bargain with the Union as the collective bargaining representatives of their employees although the Union has not been certified as the representative of such employees in accordance with § 9 of the National Labor Relations Act, 29 U.S.C.A. § 159.

Other allegations need not concern us. The Court is asked to enjoin the acts of the Union pending the final adjudication of the matter by the National Labor Relations Board. 29 U.S.C.A. § 160(e).

■ In a matter of this character, the problem for us to determine *is not* whether the Union has been guilty of unfair labor practices, but, as stated by the writer in one of the first cases brought under this provision of the Act, whether the petitioner *has reasonable ground* to believe that the charge is true and that the Complaint should issue. Le Baron v. Los Angeles Building & Construction Trades Council, D.C.Cal. 1949, 84 F.Supp. 629. As stated in that opinion:

"The test by which compliance is determined is whether the facts are such that a reasonable person could be led to believe that they constitute a violation of law. They need not be sufficient to actually prove such violation." 84 F.Supp. at page 635.

The hearing of this matter took several days. Since submission, the testimony given has been reviewed with the aid of a complete transcript prepared by the official reporter of this court. Without reviewing the incidents in detail, I am satisfied that the evidence in the record warrants the conclusion that the petitioner has reasonable ground to believe that the Union has induced the workmen of Yankee, Crowell, Paving, Welker, McCammon-Wunderlich, with whom they have no labor controversies, to cease using and handling the products of Crook and Shepherd and to cease doing business with Crook and Shepherd in order to force Crook and Shepherd to bargain with the Union as a collective bargaining agency, although it has not been certified as the representative of such employees, and, that an injunction should issue pending the final adjudication of the matter by the National Labor Relations Board.

Many of the facts presented by the petitioner were not disputed. The chief contention being that any suasion or persuasion exercised was directly on the employer. I am of the view that the acts of inducement were directed towards the employees who acted and resulted in work stoppages at the direction of the Union's representatives.

The constitutionality of the Section, 29 U.S.C.A. § 160(*l*), is challenged. I rejected the constitutional objections to the secondary boycott provision in the Taft-Hartley Act in Le Baron v. Los Angeles Building & Construction Trades Council, supra. That decision conforms to the views of higher courts cited in it and others. See, Printing Specialties and Paper Converters Union, Local 388, A.F.L. v. Le Baron, 9 Cir., 1948, 171 F.2d 331. The Supreme Court has since sustained the provisions of the specific section, 29 U.S.C.A. § 160(*l*), and others forbidding secondary pressure. International Brotherhood of Electrical Workers, Local, 501, A. F. of L. v. N. L. R. B., 1951, 341 U.S. 694, 725, 71 S.Ct. 954, 95 L.Ed. 1299; Radio Officers' Union of Commercial Telegraphers Union, A.F.L. v. N. L. R. B., 1954, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455.

The additional argument is made that by limiting the court's injunctive power to the interim before the final determination by the Board, the Board is enabled *by quick action*, to render the question moot so as to make it difficult to obtain a final determination. The argument is rather unique. We have heard much about the abuse of the injunctive process in the past. But here a *Congressional limitation* on the judicial exercise of the injunctive power in labor disputes is objected to because the administrative board by expeditious action (which is *commanded* by the Act, 29 U.S.C.A. § 160(*l*)) can render a question moot. Concededly any order by a district court granting an injunction in a proceeding of this character is appealable whether we consider it interlocutory, 28 U.S.C.A. § 1292(1), or final, 28 U.S.C.A. § 1291. The right of appeal or review is a matter of grace. It is not *necessarily* an element of due process. Luckenbach Steamship Co. v. United States, 1926, 272 U.S. 533, 536, 47 S.Ct. 186, 71 L.Ed. 394; American Federation of Labor v. National Labor Relations Board, 1939, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; Switchmen's Union of North America v. National Mediation Board, 1943, 320 U.S. 297, 300–302, 64 S.Ct. 95, 88 L.Ed. 61; Ludecke v. Watkins, 1948, 335 U.S. 160, 169–170, 68 S.Ct. 1429, 92 L.Ed. 1881. And we see no invasion of any right in the fact that the Board by quick action *in favor of a litigant* can avoid the determination of some legal questions raised during these proceedings in the United States District Court. Any questions relating to constitutional validity that may be urged in a case of this character, if not determined on direct appeal, can be raised *after* the determination by the Board,—should the Union refuse to comply and should the Board seek an order of enforcement from the Court of Appeals, 29 U.S.C.A. § 160(e); International Brotherhood of Electrical Workers, Local 501, A. F. of L. v. N. L. R. B., supra; N. L. R. B. v.

Denver Bldg. & Const. Trades Council, 1951, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284. So the argument in this respect must fail.

Injunction will issue according to the terms set forth in separate order filed herewith.

(See Appendices A and B for form of Findings and Decree entered.)

EXHIBIT A

Findings of Fact and
Conclusions of Law

This cause came to be heard on the verified petition of George A. Yager, Acting Regional Director of the Twenty-First Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board for a temporary injunction pending final adjudication of the Board of the matters involved. Upon consideration of the petition, answer, testimony, evidence, briefs, and the entire record and argument of counsel, the Court makes the following:

Findings of Fact

1. Petitioner is Acting Regional Director of the Twenty-First Region of the Board, an agency of the United States, and filed a petition herein for and on behalf of the Board.

2. Respondent, International Union of Operating Engineers, Local Union No. 12, AFL, an unincorporated association, is a labor organization within the meaning of Sections 2(5), 8(b) and 10(l) of the Act, 29 U.S.C.A. §§ 152(5), 158(b), 160(l), and is engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

3. On or about March 30 and April 26, 1955, Crook Company (herein called Crook) and William W. Shepherd and Nora D. Shepherd, co-partners doing business as Shepherd Machinery Company (herein called Shepherd), pursuant to the provisions of the Act, filed separate charges with the Board alleging that respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b), subsections (4) (A) and (4) (B) of the Act, 29 U.S.C.A. § 158(b) (4) (A, B).

4. Said charges were referred to petitioner as Acting Regional Director of the Twenty-First Region of the Board for investigation, and were investigated by petitioner and under his supervision.

5. There is, and petitioner has reasonable cause to believe that:

(a) Crook, a California corporation, is engaged at Los Angeles, California, in the sale, distribution and servicing of heavy construction equipment. Crook annually sells and ships construction equipment valued at more than $50,000 to points and places outside the State of California.

(b) Shepherd is engaged at Los Angeles, California, in the sale, distribution and repair of heavy construction equipment. During the past year Shepherd sold and shipped construction equipment and related products valued at more than $100,000 to points and places outside the State of California.

(c) Since about February 1955, respondent has been engaged in a campaign to secure recognition from Crook as the collective bargaining representative of Crook's employees.

(d) Since on or about April 6, 1955, respondent has been engaged in a similar campaign to secure recognition from Shepherd as the collective bargaining representative of the latter's employees.

(e) At no time material herein has respondent been certified under the provisions of Section 9 of the Act, 29 U.S.C.A. § 159, as the collective bargaining representative of any of the employees of Crook or of Shepherd.

(f) In support of its objective set forth in subparagraph (c) above, since on or about March 9, 1955, respondent has been picketing Crook's premises.

(g) In addition, since on or about March 11, 1955, respondent's pickets have followed Crook's employees from Crook's premises to various construction and other sites at which Crook equip-

ment was located, and have, by picketing, orders, instructions, directions and appeals, induced and encouraged employees of other employers engaged in work at said sites, including employees of Yankee Body Shop, Crowell & Larson, and Paving Materials Co. (herein called Yankee, Crowell, and Paving, respectively) to refuse to perform services for their respective employers.

(h) In furtherance of its objective set forth in paragraph (d) above, since on or about April 23, 1955, respondent, by orders, directions, instructions and appeals, induced and encouraged employees of Ralph Welker and of McCammon-Wunderlich Company, excavating and grading contractors, to refuse to work or perform services for Welker and McCammon-Wunderlich Company, while employees of Shepherd were at construction sites repairing equipment leased by Welker from Shepherd and purchased by McCammon-Wunderlich Company from Shepherd, respectively.

(i) By said acts and conduct, set forth in paragraphs (g) and (h) above, since on or about March 11, 1955, respondent has engaged in, and by picketing, orders, directions, instructions, appeals, and by other means, has induced and encouraged employees of Yankee, Crowell, Paving, Welker, McCammon-Wunderlich Company, and of other employers, to engage in, strikes or concerted refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on goods, articles, materials or commodities, or to perform services.

(j) Objects of respondent's conduct referred to in subparagraphs (g), (h) and (i) above are: (1) to force or require Yankee, Crowell, Paving, Welker, McCammon-Wunderlich Company, and other employers and persons, to cease using, selling, handling, transporting, or otherwise dealing in the products of Crook and/or Shepherd, or to cease doing business with Crook and/or Shepherd; and (2) to force or require Crook and/or Shepherd to recognize or bargain with respondent as the collective bargaining representative of their employees although respondent has not been certified as the representative of such employees in accordance with Section 9 of the Act.

6. It may be fairly anticipated that, unless restrained, respondent will continue or repeat the acts and conduct hereinabove set forth in paragraph 5, subparagraphs (g), (h), (i) and (j), or similar or like acts and conduct in violation of Section 8(b), subsections (4) (A) and (B) of the Act. It is therefore essential, appropriate, just, and proper, for the purpose of effectuating the policies of the Act, and in accordance with the provisions of Section 10(*l*) thereof, that, pending final adjudication of the Board with respect to these matters, respondent be enjoined and restrained from the commission of the acts and conduct above alleged, similar acts and conduct or repetitions thereof.

### Conclusions of Law

1. Respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10(*l*) of the Act.

2. This Court has jurisdiction of the within proceedings and of the respondent and is empowered to grant injunctive relief under Section 10(*l*) of the Act.

3. There is, and the petitioner has reasonable cause to believe that the respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b), subsections (4) (A) and (4) (B) of the Act, affecting commerce, within the meaning of Section 2, subsections (6) and (7) of the Act, and that the continuation of these practices is impairing the policies of the Act.

4. Pending final adjudication by the Board of said matters, respondent, its agents, members, servants, employees, attorneys, and all persons in active concert or participation with them should be enjoined and restrained from the commission or continuance of the acts and conduct set forth in the above Findings of Fact and from like or related acts

or conduct, whose commission in the future may be fairly anticipated from respondent's acts and conduct in the past. This shall not prevent the representatives of the respondent from interviewing, in the customary manner, at reasonable hours, and by the ordinary and customary methods, any employees of the employers named herein for the purpose of ascertaining whether the employees of any of the employers are members in good standing of the Union's Local.

## EXHIBIT B

### Decree Granting Injunction

This cause came on to be heard on the verified petition of George A. Yager, Acting Regional Director for the Twenty-First Region of the National Labor Relations Board, on behalf of the Board, for a temporary injunction pending final adjudication of the Board of the matters involved, and upon issuance of a rule to show cause why injunctive relief should not be granted as prayed in the petition. The Court, upon consideration of the petition, answer, testimony, evidence, briefs and the entire record and argument of counsel for the parties, duly made and entered Findings of Fact and Conclusions of Law.

It is, therefore, by this Court ordered, adjudged and decreed that:

1. Respondent, International Union of Operating Engineers, Local Union No. 12, AFL, its agents, members, servants, employees, attorneys and all persons in active concert or participation with it, be and they hereby are, restrained and enjoined, pending the final adjudication of this matter by the National Labor Relations Board from:

(a) Engaging in, or by picketing, orders, instructions, directions and appeals, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, inducing or encouraging employees of Yankee Body Shop, Crowell & Larson, Paving Materials Co., Ralph Welker, McCammon-Wunderlich Company, or any other employer, to engage in, a strike or concerted refusal in the course of their employment to use, manufacture, process, transport or otherwise handle or work on any goods, articles, materials or commodities, or to perform any services, where an object thereof is (1) to force or require their respective employers, or any other employer or person, to cease doing business with Crook Company and/or Shepherd Machinery Company, or (2) to force or require Crook Company and/or Shepherd Machinery Company to recognize or bargain with respondent as the collective bargaining representative of any of their employees unless and until respondent is certified as the representative of such employees in accordance with the provisions of Section 9 of the Act.

(b) Nothing in this order and injunction shall be construed to prohibit any representative of said Local Union from interviewing, in the customary manner, at reasonable hours, and by the ordinary and customary methods, any employees of the employers named herein for the purpose of ascertaining whether the employees of any of the employers are members in good standing of the Union's Local.

2. This injunction shall remain in effect until the matters involved have been finally adjudicated by the National Labor Relations Board.

3. This Decree Granting Injunction, together with a copy of the Findings of Fact and Conclusions of Law upon which it is issued, shall be served by a United States Marshal upon the respondent, International Union of Operating Engineers, Local Union No. 12, AFL.